DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

CAROLINE ZALKA (*pro hac vice* forthcoming)
caroline.zalka@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant TIMOTHY BOSSIDY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BLOC DISPENSARY, LLC, | Case No. 2:25-cv-06457-MCS-MAR |
| Plaintiff, | **DEFENDANT TIMOTHY BOSSIDY'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| TIMOTHY BOSSIDY, | |
| Defendant. | Date:         September 15, 2025<br>Time:        9:00 a.m.<br>Judge:       Honorable Mark C. Scarsi<br>Courtroom: 7C |

## <u>NOTICE OF MOTION AND MOTION</u>

**TO THE COURT AND ALL PARTIES OF RECORD**:

**PLEASE TAKE NOTICE** that on September 15, 2025, at 9:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Mark C. Scarsi, in Courtroom 7C, 7th Floor, located at First Street Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Defendant Timothy Bossidy will and hereby does move to dismiss the claims against him in the Complaint filed by Plaintiff Bloc Dispensary LLC ("Plaintiff" or "Justice Grown") in this action. Mr. Bossidy's motion to dismiss is brought pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of David R. Singh and accompanying Exhibit, all other pleadings and papers on file herein, and such other arguments and evidences as may be presented to the Court.

Prior to moving to transfer and dismiss this matter in the District of New Jersey, in accordance with the judicial preferences of Judge Quraishi and Local Rule 7-3, Mr. Bossidy submitted a pre-motion letter in which he requested a pre-motion conference and set forth the substantive grounds of his anticipated motions. ECF No. 9. Justice Grown filed a letter in response disputing the basis of Mr. Bossidy's contemplated motions. ECF No. 10. After review of the parties' pre-motion letters, Judge Quraishi waived the pre-motion conference and set a briefing schedule for the motion to transfer and motion to dismiss. ECF No. 11. Judge Quraishi granted Mr. Bossidy's motion to transfer (ECF No. 15), and this matter was subsequently transferred to the Central District of California while the motion to dismiss was unopposed but not adjudicated. ECF No. 17.

This present motion is made pursuant to the Court's July 29, 2025 Order instructing Mr. Bossidy to "file a renewed motion or otherwise respond to the complaint within 14 days." ECF No. 27.

1   Dated: August 12, 2025                    Respectfully submitted,

2                                             WEIL, GOTSHAL & MANGES LLP

3                                             By:   /s/ David R. Singh

4                                                  DAVID R. SINGH

5                                             Attorney for Defendant TIMOTHY

6                                             BOSSIDY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 3

LEGAL STANDARD..................................................................................... 6

ARGUMENT................................................................................................. 7

I.    JUSTICE GROWN HAS WAIVED ITS RIGHT TO OPPOSE MR. BOSSIDY'S MOTION TO DISMISS AND AMEND ITS COMPLAINT ........... 7

II.   JUSTICE GROWN FAILS TO ADEQUATELY ALLEGE A CLAIM FOR BREACH OF FIDUCIARY DUTY ......................................................... 8

    A.    Plaintiff Fails to Plead That Mr. Bossidy Owed Fiduciary Duties to the Company ........................................................................ 8

    B.    Plaintiff Fails to Plead That Mr. Bossidy Breached Any Fiduciary Duties Owed to the Company ..................................... 10

      1.    Plaintiff Fails to Plead a Breach of the Duty of Loyalty ........................... 11

      2.    Plaintiff Fails to Plead a Breach of the Duty of Candor ........................... 15

    C.    Plaintiff Fails to Plead Damages................................................. 16

III.  JUSTICE GROWN FAILS TO ADEQUATELY ALLEGE A CONVERSION CLAIM ......................................................................... 17

    A.    Plaintiff Fails to Plead Conversion of Any Tangible Property................... 17

    B.    Plaintiff Fails to Plead Mr. Bossidy Possessed Justice Grown's Property Without Authorization or Withheld Any Property to the Exclusion of Justice Grown's Rights .......................................... 19

CONCLUSION............................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re 3P Hightstown, LLC*,
   631 B.R. 205 (Bankr. D.N.J. 2021) ............................................................ 9

6

*Ashcroft v. Iqbal*,
7       556 U.S. 662 (2009)..................................................................... 3, 6, 12

8

*Bell Atl. Corp. v. Twombly*,
9       550 U.S. 544 (2007)................................................................ 6, 7, 12, 15

10

*Canon Fin. Servs., Inc. v. Bray*,
   2015 WL 851816 (D.N.J. Feb. 26, 2015) ................................................ 17

11

12

*In re Classica Grp.*,
   2006 WL 2818820 (Bankr. D.N.J. Sept. 29, 2006) .................................. 10

13

14

*In re CTE 1 LLC*,
   2023 WL 5257940 (Bankr. D.N.J. Aug. 11, 2023) ................................. 8, 9

15

16

*Ellis v. Pub. Serv. Elec. & Gas*,
   2021 WL 2201967 (D.N.J. June 1, 2021)................................................ 7, 9

17

18

*Esqueda v. Assefa*,
   2017 WL 11917619 (C.D. Cal. July 20, 2017) .......................................... 7

19

20

*Fainsbert v. Cuthbert*,
   2006 WL 2096057 (D.N.J. July 27, 2006) ................................................. 6

21

22

*FMHUB, LLC v. MuniPlatform, LLC*,
   2021 WL 1422873 (D.N.J. April 15, 2021) ............................................. 17

23

24

*Goydos v. Rutgers, State Univ.*,
   2024 WL 1329253 (D.N.J. Mar. 28, 2024) ......................................... 15, 16

25

26

*Green Party of N.J. v. Hartz Mountain Indus., Inc.*,
   752 A.2d 315 (N.J. 2000) ......................................................................... 10

27

*Hayden Gateway LLC v. Advanced Flower Cap. Inc.*,
   No. 3:25-cv-02789-ZNQ-JBD (D.N.J. Apr. 17, 2025) .............................. 5

28

*Jannett v. Gilmartin,*
   2006 WL 2195819 (N.J. Super. Ct. July 21, 2006) .................................................... 13

*Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.,*
   859 F. Supp. 2d 706 (D.N.J. 2012) .......................................................................... 8

*Jurista v. Amerinox Processing, Inc.,*
   492 B.R. 707 (D.N.J. 2013) ............................................................................ 8, 10, 11

*K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita,*
   2006 WL 1281291 (D.N.J. May 10, 2006) ................................................................ 18

*Krys v. Aaron,*
   106 F. Supp. 3d 472 (D.N.J. 2015) .......................................................................... 10

*Lamme v. Client Instant Access, LLC,*
   2022 WL 1276123 (N.J. App. Div. Apr. 29, 2022) .................................................... 11

*Lemar v. Am. Trading Corp.,*
   643 F. App'x 79 (3d Cir. 2016) .......................................................................... 6, 14

*Lutsky v. Monomouth Marine Engines, Inc.,*
   2013 WL 2285971 (D.N.J. May 22, 2013) ................................................................ 20

*Martinez v. Scerbo,*
   2007 WL 2769594 (D.N.J. Sept. 20, 2007) ................................................................ 7

*In re Merck & Co. Sec., Derivative & ERISA Litig.,*
   493 F.3d 393 (3d Cir. 2007) .................................................................................... 10

*Mickens v. Ford Motor Co.,*
   2011 WL 3444055 (D.N.J. Aug. 5, 2011) .................................................................. 6

*Namerow v. PediatriCare Assocs., LLC,*
   218 A.3d 839 (N.J. Ch. Div. 2018) .......................................................................... 16

*Nat'l Util. Serv., Inc. v. Chesapeake Corp.,*
   45 F. Supp. 2d 438 (D.N.J. 1999) ............................................................................ 9

*In re ORFA Sec. Litig.,*
   654 F. Supp. 1449 (D.N.J. 1987) ............................................................................ 16

*Palazzi v. Cigna Health & Life Ins. Co.,*
   2024 WL 3361615 (D.N.J. July 8, 2024) .................................................................... 9

*Pickett v. Brown*,
  2022 WL 1200802 (D.N.J. Apr. 22, 2022)................................................... 19

*Regal-Pinnacle Integrations Indus., Inc. v. Phila. Indem. Ins. Co.*,
  2013 WL 1737236 (D.N.J. Apr. 22, 2013)................................................... 7

*Scheidt v. DRS Techs.*,
  36 A.3d 1082, (N.J. App. Div. 2012) ........................................................ 15

*Schmidt v. Skolas*,
  706 F. App'x 68 (3d Cir. 2017) ................................................................. 13

*Seidman v. Clifton Sav. Bank, S.L.A.*,
  14 A.3d 36 (N.J. 2011) ............................................................................. 12

*Seidman v. Clifton Sav. Bank, S.L.A.*,
  2009 WL 2513797 (N.J. App. Div. Aug. 19, 2009), *aff'd*, 14 A.3d 36 (N.J. 2011) .. 11

*Matter of Seidman*,
  37 F.3d 911 (3d Cir. 1994) ................................................................. 10, 11

*Shrink Packaging Sys. Corp. v. Kist*,
  2023 WL 5664733 (D.N.J. Sept. 1, 2023).......................................... 6, 17, 18

*Slim CD, Inc. v. Heartland Payment Sys. Inc.*,
  2007 WL 2459349 (D.N.J. Aug. 24, 2007) ................................................ 18

*In re Sols. Liquidation LLC*,
  608 B.R. 384 (Bankr. D. Del. 2019).......................................................... 13

*Stanziale v. Nachtomi*,
  2004 WL 1812705 (D. Del. Aug. 6, 2004)................................................. 12

*Swift v. Pandey*,
  2013 WL 6022093 (D.N.J. Nov. 13, 2013) ................................................ 14

*In re Teleservices Grp., Inc.*,
  2009 WL 838157 (Bankr. D.N.J. Jan. 15, 2009)................................... 10, 11

*Tervardanyan v. Creditors Fin. Grp., LLC*,
  2012 WL 5928136 (C.D. Cal. Nov. 19, 2012) ............................................ 7

*Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*,
  2014 WL 108895 (Del. Ch. Jan. 13, 2014) ................................................ 19

*W.H.P.M., Inc., v. Immunostics, Inc.*,
  2020 WL 359146 (D.N.J. Jan. 22, 2020) .................................................................... 20

*Winklevoss Cap. Fund, LLC v. Shaw*,
  2024 WL 3888757 (Del. Ch. Aug. 21, 2024) ............................................................. 17

*Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ................................................................................. 6, 7, 9

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................... 5

N.J. Stat. Ann. §§ 42:2C-11 .......................................................................................... 8, 9

N.J. Stat. Ann. § 42:2C-39 ........................................................................................... 8, 9

**Other Authorities**

18B Am. Jur. 2d Corporations § 1469 ...................................................................... 10, 15

Fed. R. Civ. P. 8 ........................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 6, 7, 9, 13

Fed. R. Civ. P. 15(a)(1)(B) ................................................................................... 6, 7, 8

C. D. Cal. Local Rule 7-12 ........................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRELIMINARY STATEMENT**

As an initial matter, Plaintiff's failure to oppose Mr. Bossidy's prior Rule 12(b)(6) motion in the District of New Jersey constitutes consent to the granting of Defendant's motion and dismissal of this action. Consistent with the Court's July 29, 2025 Order (ECF No. 27), Mr. Bossidy further restates in full his prior Motion to Dismiss before this Court. As explained below, Plaintiff fails to adequately plead facts supporting either a breach of fiduciary duty or conversion claim against the sole defendant, Mr. Bossidy.

Lender AFC Gamma extended several loans to Justice Grown in connection with its cannabis operations in New Jersey and Pennsylvania. In March 2024, Justice Grown and AFC Gamma entered into a forbearance agreement, pursuant to which Justice Grown agreed to retain Mr. Bossidy as Chief Restructuring Officer ("CRO"). In February 2025, after AFC Gamma informed Justice Grown that it had defaulted on its loan, Plaintiff began preparing for litigation. It sent litigation hold letters to both AFC Gamma and Mr. Bossidy, threatened claims against Mr. Bossidy, and demanded, among other things, that he produce electronically stored communications from the servers of SierraConstellation Partners ("SCP") (the consulting firm where Mr. Bossidy works). Mr. Bossidy requested basic information and context for why threats were being made against him and why he was suddenly being asked to produce information outside of the ordinary course. Following Justice Grown's repeated refusal to provide Mr. Bossidy with further context for its claims and demands, Mr. Bossidy informed Justice Grown that he would consult a lawyer with respect to its demand for production. Characterizing Mr. Bossidy's consultation with counsel as "suspicious," this litigation immediately followed.

Justice Grown levels two factually and legally bereft claims against Mr. Bossidy. First, Justice Grown alleges that Mr. Bossidy violated his fiduciary duties of loyalty and candor to Justice Grown by intentionally mismanaging the Company on behalf of AFC Gamma and withholding "critical business communications" with AFC Gamma. Second, Justice Grown alleges that Mr. Bossidy's "refusal to turn over" those communications amounts to conversion of its corporate property. Both claims should be dismissed upon

the instant Motion.

*First*, there are no default fiduciary duties owed to limited liability companies in New Jersey. Plaintiff fails to discuss, attach or even reference the Justice Grown Operating Agreement that details whether Justice Grown officers owe (or do not owe) fiduciary duties to the Company, and what the scope of those duties are. In short, Plaintiff fails to plead any factual allegations as to the source or scope of Mr. Bossidy's duties to Justice Grown, and instead summarily asserts the legal conclusion that Mr. Bossidy owed Justice Grown fiduciary duties. This is insufficient pleading.

*Second*, Plaintiff does not plead facts sufficient to state a breach of fiduciary duty claim. To advance its litigation effort, Justice Grown takes issue with Mr. Bossidy's management decisions based on cherry picked numbers, ignoring the Company's overall financial performance measured by EBITDA (for example), describing his management as "disastrous." It is black-letter law, however, that mismanagement alone does not suffice. To survive this Motion, Plaintiff must plead specific factual allegations demonstrating that Mr. Bossidy acted in bad faith and for an interest other than the best interest of the Company. All that Justice Grown offers in this regard is their wholly unsupported speculation that Mr. Bossidy's purported mismanagement decisions "must have been" made "in the best interests of AFC Gamma and not of Justice Grown." Compl. ¶ 58; *see, e.g., id.* ¶ 25 ("Bossidy's leadership and decisions are crippling operations so badly that it is hard to see that he is not doing this on purpose"); *id.* ¶ 60 ("Bossidy's string of inexplicably poor management decisions . . . presents a strong inference that he is and long has been actively working against Justice Grown's best interests"). Plaintiff's speculation is no substitute for adequately pleaded facts.

Setting aside the insufficiency of Plaintiff's speculative allegations, its theory of a conspiracy between AFC Gamma and Mr. Bossidy to "seize Justice Grown's assets" makes no sense. *Id.* ¶ 39. If AFC Gamma's ultimate goal all along was to seize Justice Grown's assets, it easily could have done so after Justice Grown's loan defaults in 2023 before Mr. Bossidy was even appointed as its CRO. Plaintiff offers no answer to this

fundamental plausibility defect in its Complaint.

*Third*, Justice Grown is unable to plead any plausible and resulting damages from Mr. Bossidy's purported breach of fiduciary duty. Its claim that it suffered in excess of $170.9 million in damages due to Mr. Bossidy's alleged mismanagement is speculative, conclusory and legally insufficient to support a claim for damages.

*Fourth*, Plaintiff's conversion claim fails as a matter of law because under New Jersey law, conversion does not apply to the intangible property sought by Justice Grown, *i.e.* electronic communications between Mr. Bossidy and AFC Gamma and phone logs of his verbal communications. Justice Grown otherwise fails to plead a plausible claim for conversion because it cannot satisfy the remaining elements to support its claim, that the emails and phone logs it seeks are the property of Justice Grown and that Mr. Bossidy wrongfully exercised control over these communications to the exclusion of Justice Grown's rights.

For the reasons discussed below, the Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

Justice Grown is a limited liability cannabis company, organized under the laws of New Jersey, that operates a cultivation and manufacturing facility as well as three retail dispensaries in New Jersey. Compl. ¶¶ 1, 17. Affiliates of Justice Grown also maintain and operate cannabis facilities in other states, including Pennsylvania. *Id.* ¶¶ 31, 34. Justice Grown has used its assets in both New Jersey and Pennsylvania as collateral to secure loans from AFC Gamma, Inc. (collectively with affiliated entities and agents "AFC Gamma"), one of Justice Grown's lenders. *Id.* ¶¶ 21, 34.

On March 6, 2024, Justice Grown and several affiliates entered into a forbearance agreement with AFC Gamma (the "Forbearance Agreement"), pursuant to which Justice

---

[1] The following factual references derive from the Complaint or attached exhibits and are accepted as true only for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1   Grown agreed to engage an outside consultant, SierraConstellation Partners, to assist with

2   managing its New Jersey operations. Ex. A[2] § 5.7 (Forbearance Agreement) at 2. About

3   a month later, Mr. Bossidy was appointed as the Chief Restructuring Officer of Justice

4   Grown. Compl. ¶¶ 2, 6, 52.

5       Consistent with the parties' agreed upon mandate for his position, Mr. Bossidy

6   made various business decisions to assist Justice Grown during the forbearance period.

7   Ex. A § 5.7; Compl. ¶ 2. Mr. Bossidy attempted to cut costs through measures like

8   streamlining product offerings and reducing headcount. *Id.* ¶¶ 25–26, 28. He also made

9   efforts to increase revenue by encouraging product suppliers for the dispensaries to buy

10  from Justice Grown's cultivation. *Id.* ¶ 28. During his time as CRO, Mr. Bossidy

11  communicated with AFC Gamma concerning developments at Justice Grown. *Id.* ¶¶ 6–8.

12      In February 2025, AFC Gamma declared that Justice Grown had defaulted on its

13  loan obligations, and it sought either to seize Justice Grown's collateral or to receive a

14  $30 million guaranty payment from the Company's owners. *Id.* ¶¶ 19, 32. Justice Grown

15  asserts that AFC Gamma's pursuit of a default claim was motivated by its intent to "seize

16  Justice Grown's assets" for a multi-state cannabis operator (*id.* ¶ 39), but does not assert

17  or plead any facts indicating that Mr. Bossidy was engaged in any of these conversations

18  or was aware of AFC Gamma's alleged intent to seize Justice Grown's assets.

19      After receiving its notice of default, Justice Grown responded to AFC Gamma on

20  February 26, 2025, and sent litigation hold letters to both Mr. Bossidy and AFC Gamma

21  shortly thereafter on February 28, 2025. *Id.* ¶ 44; Compl. Ex. 1 at 1. The litigation hold

22  letter warned Mr. Bossidy of "possible litigation" based on his purported

23  "mismanagement of the company," and Justice Grown's concern that he was "in cahoots"

24  with AFC Gamma. *Id.* ¶¶ 44–45; Compl. Ex. 1 at 1.

25      A few days later, on or around March 3, 2025, the owners followed up with Mr.

26  Bossidy insisting that he send the requested information, including a list of email accounts

27

28  ───────────────
    [2] "Ex." refers to the exhibit attached to the Declaration of David R. Singh, filed with this
    brief.

he used to communicate with AFC Gamma, by 10:00 a.m. the following day. *Id.* ¶¶ 50, 52; Compl. Ex. 1 at 3–4. Tellingly, Michael Kanovitz remarked in his email that "[t]he company is in a very important battle with AFC where well over $170 million is at stake. You possess important evidence. Getting it from you ASAP is vital to company" [sic]. Compl. Ex. 1 at 4. Mr. Bossidy responded at 7:28 a.m. the next morning, asking Mr. Kanovitz to explain the context for his demands and if they could schedule a call to discuss. *Id.* at 3. Two hours later, at 9:34 a.m., Mr. Kanovitz wrote back, refusing Mr. Bossidy's request for a call, and reiterating his demands for Mr. Bossidy's communications and email accounts. *Id.* at 2–3. Later on March 4, 2025, Mr. Bossidy responded to Mr. Kanovitz, explaining that he intended to seek the advice of legal counsel concerning the allegations asserted against him in Justice Grown's litigation notice and Justice Grown's request to obtain communications from SCP's servers. *Id.* at 1–2.

At 12:17 p.m., Mr. Kanovitz told Mr. Bossidy he would continue to seek Mr. Bossidy's communications with AFC Gamma, and requested contact information for Mr. Bossidy's legal counsel. *Id.* at 1. Mr. Kanovitz reiterated that "getting this information is a vital priority, and not having the information is hurting the company in its dealings with AFC." *Id.* Without waiting for Mr. Bossidy's counsel to respond concerning its request for production, Justice Grown filed this action against Mr. Bossidy on March 7, 2025 in the United States District Court for the District of New Jersey (the "New Jersey Action"), and later sued entities affiliated with AFC Gamma in a separate lawsuit that is pending in the District of New Judge before Judge Quraishi. *See Hayden Gateway LLC v. Advanced Flower Cap. Inc.*, No. 3:25-cv-02789-ZNQ-JBD (D.N.J. Apr. 17, 2025).

In accordance with the Court's May 20, 2025 Order, Mr. Bossidy previously filed this motion to dismiss on June 13, 2025 (ECF No. 13), and at the same time, filed a motion to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 12. Plaintiff failed to oppose either motion by the June 23, 2025 deadline or at any point thereafter. On June 30, 2025, Mr. Bossidy requested Judge Quraishi permit his motion to transfer to proceed as unopposed and be granted accordingly. ECF No. 14.

DEFENDANT TIMOTHY BOSSIDY'S MOTION TO DISMISS · 5 · CASE NO. 2:25-CV-06457-MCS-MAR

1  Judge Quraishi granted Mr. Bossidy's motion to transfer (ECF No. 15), and the case was

2  subsequently transferred to the Central District of California. ECF No. 17. At the time of

3  the transfer, this motion to dismiss was unopposed but unadjudicated. Pursuant to Federal

4  Rule of Civil Procedure 15(a)(1)(B), Plaintiff had the right to amend its Complaint, but

5  failed to do so by July 7, 2025, the deadline imposed by the Federal Rules. *See* Fed. R.

6  Civ. P. 15(a)(1)(B).

7        On July 29, 2025, the Court denied Mr. Bossidy's pending motion to dismiss and

8  instructed him to file a renewed motion or otherwise respond to the Complaint by August

9  12. ECF No. 27. Prior to denying the motion to dismiss, the Court set the motion for

10  hearing on August 25, 2025 at 10:00 a.m. ECF No. 24. To date, Plaintiff has not appeared

11  in this matter, failing to comply with the Court's July 23, 2025 Notice to file a Notice of

12  Pro Hac Vice or a Notice of Appearance by July 30, 2025. *See* ECF No. 21.

13  ## LEGAL STANDARD

14        To survive dismissal of its Complaint under Rule 12(b)(6), a plaintiff must "'state

15  a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

16  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'Bald assertions' or

17  'legal conclusions'" are not credited by the court "when deciding a motion to dismiss."

18  *Fainsbert v. Cuthbert*, 2006 WL 2096057, at *3 (D.N.J. July 27, 2006). "The plausibility

19  standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'"

20  *Lemar v. Am. Trading Corp.*, 643 F. App'x 79, 81–82 (3d Cir. 2016) (citation omitted).

21  "Speculative assertions do not satisfy the plausible pleading standard." *Mickens v. Ford*

22  *Motor Co.*, 2011 WL 3444055, at *5 (D.N.J. Aug. 5, 2011); *Shrink Packaging Sys. Corp.*

23  *v. Kist*, 2023 WL 5664733, at *3 (D.N.J. Sept. 1, 2023) ("The factual allegations 'must

24  be enough to raise a right to relief above the speculative level.'") (citation omitted).

25        "A claim has facial plausibility when the plaintiff pleads factual content that allows

26  the court to draw the reasonable inference that the defendant is liable for the misconduct

27  alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Accordingly, "a

28  formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

at 555. Factual allegations, exhibits, or testimony that are "extraneous to the pleadings" will not be considered or relied on by the Court. *See Ellis v. Pub. Serv. Elec. & Gas*, 2021 WL 2201967, at *1 n.1 (D.N.J. June 1, 2021) (citing *Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

## ARGUMENT

### I.    JUSTICE GROWN HAS WAIVED ITS RIGHT TO OPPOSE MR. BOSSIDY'S MOTION TO DISMISS AND AMEND ITS COMPLAINT

Although Mr. Bossidy's motion to dismiss was still pending when this matter was transferred to the Central District of California, Plaintiff has waived its right to oppose the Rule 12(b)(6) motion by failing to timely file or otherwise respond on or before the June 23, 2025 deadline, or at any point thereafter. *See, e.g., Tervardanyan v. Creditors Fin. Grp., LLC*, 2012 WL 5928136, at *1 (C.D. Cal. Nov. 19, 2012) ("Under the Local Rules, "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion") (quoting Local Rule 7-12)**;** *Esqueda v. Assefa*, 2017 WL 11917619, at *1 (C.D. Cal. July 20, 2017) ("[t]he Court deems Plaintiff's failure to file an Opposition to Defendant's Motion to Dismiss consent to the granting of the Motion."); *Regal-Pinnacle Integrations Indus., Inc. v. Phila. Indem. Ins. Co.*, 2013 WL 1737236, at *2 (D.N.J. Apr. 22, 2013) ("Plaintiff has not responded to Defendant's Motion to Dismiss, nor has it requested an extension of time to do so. Accordingly, the Court treats Defendant's Motion as unopposed."); *Martinez v. Scerbo*, 2007 WL 2769594, at *1 (D.N.J. Sept. 20, 2007) ("[T]he Court has received no opposition from Plaintiff to Defendant's motion. Accordingly, the Court shall treat Defendant's motion as unopposed.").

Further, Justice Grown has failed to timely amend its Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), which provides "a party may amend its pleading once as a matter of course no later than: . . . 21 days after service of a motion under Rule 12(b) . . . ." Fed. R. Civ. P. 15(a)(1)(B). The July 7, 2025 deadline imposed by the Rules, has come and gone without any filing, request for an extension or other

communication by Justice Grown in either the New Jersey action or this one. Accordingly, given Plaintiff's waiver of its right to oppose Mr. Bossidy's motion to dismiss in the New Jersey Action and failure to timely file an amended Complaint under Federal Rule of Civil Procedure 15(a)(1)(B) in either the New Jersey Action or this action, Justice Grown's Complaint should be dismissed.

## II.    JUSTICE GROWN FAILS TO ADEQUATELY ALLEGE A CLAIM FOR BREACH OF FIDUCIARY DUTY

To withstand dismissal of its breach of fiduciary duty claim, Justice Grown must adequately plead: "(1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 759 (D.N.J. 2013); *see Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 717–18 (D.N.J. 2012) ("it is well established that a fiduciary's duties are not limitless, but are circumscribed by the parameters of the fiduciary relationship . . . [a]ccordingly, a Plaintiff must allege a duty that arises within the scope of the fiduciary relationship and that Defendant breached that particular duty."). As set forth below, Plaintiff's Complaint fails to adequately plead its breach of fiduciary duty claim.

### A.    Plaintiff Fails to Plead That Mr. Bossidy Owed Fiduciary Duties to the Company

In New Jersey, limited liability companies like Justice Grown are organized according to the Revised Uniform Limited Liability Company Act ("RULLCA"), which sets out the default fiduciary duties of LLC members and managers. *See* N.J. Stat. Ann. §§ 42:2C-11, 42:2C-39; *see also In re CTE 1 LLC*, 2023 WL 5257940, at *12 (Bankr. D.N.J. Aug. 11, 2023). New Jersey's Legislature "intended that [the] RULLCA 'be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements.'" *In re CTE 1 LLC*, 2023 WL 5257940, at *12 (quoting RULLCA § 42:2C-11(i)). New Jersey LLCs have the authority to alter the scope of duties owed by their members or managers, and to eliminate certain duties

1  entirely relating to specific categories or types of activity. *See* N.J. Stat. Ann. § 42:2C-

2  11(d). "Absent an affirmative grant in the [LLC's operating agreement]," only LLC

3  managers owe a duty of loyalty to the company. *In re CTE*, 2023 WL 5257940, at *13.

4  Critically, the RULLCA does not impose any fiduciary duties on LLC officers by default;

5  only the provisions of the LLC agreement can affirmatively ascribe fiduciary duties to

6  officers. *See* N.J. Stat. Ann. §§ 42:2C-11, 42:2C-39; *In re 3P Hightstown, LLC*, 631 B.R.

7  205, 213 (Bankr. D.N.J. 2021) ("absent a contrary provision in the operating agreement

8  of an LLC—only managing members of LLC owe traditional fiduciary duties of loyalty

9  and care[.]")

10  Here, the Complaint only asserts the legal conclusion that "[a]s CRO, Defendant

11  Bossidy owes fiduciary duties to Justice Grown, including the duty of loyalty and duty of

12  candor." Compl. ¶ 64. Justice Grown pleads no facts to establish the source and scope of

13  Mr. Bossidy's fiduciary relationship with the Company, conspicuously failing to

14  reference or attach Justice Grown's Operating Agreement that dictates the scope of the

15  duties owed by Justice Grown's officers (or whether duties are even owed), which

16  demonstrates the insufficiency of its claim. *Ellis*, 2021 WL 2201967, at *2 (in deciding a

17  motion to dismiss under Rule 12(b)(6), the court "does not consider matters outside of the

18  pleadings and relies 'only [on] the allegations contained in the complaint, exhibits

19  attached to the complaint and matters of public record.'") (citation omitted).[3]

20

21  [3] Although Justice Grown contends in its May 19, 2025 letter response to Mr. Bossidy's
request for a pre-motion conference that the Engagement Letter executed between Justice
22  Grown and SCP "plainly establishes a basis for a fiduciary relationship between Bossidy
and Justice Grown," (ECF Dkt. No. 10 at 2, § II(A)), it failed to allege any facts
23  concerning the Engagement Letter in its Complaint, and "'[i]t is axiomatic that the
complaint may not be amended by the briefs in opposition to a motion to dismiss.'"
24  *Palazzi v. Cigna Health & Life Ins. Co.*, 2024 WL 3361615, at *1 n.2 (D.N.J. July 8,
2024) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).
25  Further, if Plaintiff attempts to amend its complaint through opposition and belatedly
invokes the Engagement Letter as the basis for the fiduciary relationship between Mr.
26  Bossidy and Justice Grown (rather than the Operating Agreement), Defendant reserves
the right to submit supplemental briefing as to why Plaintiff's claim fails under California
27  law, which governs the Engagement Letter. *See Nat'l Util. Serv., Inc. v. Chesapeake
Corp.*, 45 F. Supp. 2d 438, 445 (D.N.J. 1999) (granting defendants leave "to file a sur-
28  reply with regard to the choice of law issue" when plaintiff "first adopted this position
in its reply brief" because "defendants did not have an opportunity to respond to it.").

DEFENDANT TIMOTHY BOSSIDY'S          9          CASE NO. 2:25-CV-06457-MCS-MAR
MOTION TO DISMISS

**B.    Plaintiff Fails to Plead That Mr. Bossidy Breached Any Fiduciary Duties Owed to the Company**

In New Jersey, courts apply the business judgment rule to evaluate whether a corporate officer breached his fiduciary duties. The business judgment rule is a "powerful presumption that, in making any business decisions," officers and directors "acted on an informed basis, in good faith and in the honest belief that the action taken furthered the best interests of the company." *See Krys v. Aaron*, 106 F. Supp. 3d 472, 483 (D.N.J. 2015) (internal quotations omitted) (citing *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 402 (3d Cir. 2007) (overruled on other grounds)); *In re Classica Grp.*, 2006 WL 2818820, at *7 (Bankr. D.N.J. Sept. 29, 2006) ("The business judgment rule applies equally to corporate directors and officers."). Accordingly, "when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability." *Green Party of N.J. v. Hartz Mountain Indus., Inc.*, 752 A.2d 315, 326 (N.J. 2000).

The duty of loyalty requires corporate fiduciaries "to act in the best interests of the corporation, rather than for their own benefit, and 'requires an undivided and unselfish loyalty to the corporation [and] demands that there shall be no conflict between duty and self-interest.'" *Jurista*, 492 B.R. at 761 (quoting *In re Teleservices Grp., Inc.*, 2009 WL 838157, at *12 (Bankr. D.N.J. Jan. 15, 2009)). The duty of candor, which "is encompassed within the duty of loyalty," requires "corporate fiduciaries to disclose all material information relevant to corporate decisions from which they may derive a personal benefit." *Matter of Seidman*, 37 F.3d 911, 935 n.34 (3d Cir. 1994) (cleaned up).

To adequately allege a breach of fiduciary duties of loyalty and candor sufficient to overcome the business judgment presumption, the Complaint must plead facts plausibly showing that Mr. Bossidy "ha[d] a conflicting interest in [a] transaction," withheld information concerning a potential conflict, or that he acted in bad faith. *Jurista*, 492 B.R. at 761–62; *see* 18B Am. Jur. 2d Corporations § 1469. An officer is considered "interested" if he "either 'appear[s] on both sides of a transaction . . . or expect[s] to derive

1    any personal financial benefit from it in the sense of self-dealing[.]'" *Jurista,* 492 B.R. at

2    761 (quoting *Seidman*, 37 F.3d at 934). Bad faith can be established if well-pled facts

3    show that an officer "(1) intentionally acted with a purpose other than that of advancing

4    the best interests of the corporation, (2) acted with the intent to violate applicable positive

5    law, or (3) intentionally failed to act in the face of a known duty to act, thereby

6    demonstrating a conscious disregard for his duties." *Id*. at 762 (quoting *In re Teleservices*

7    *Grp., Inc.*, 2009 WL 838157, at *13).

8    ### 1.    Plaintiff Fails to Plead a Breach of the Duty of Loyalty

9    To support its breach of loyalty claim, Justice Grown points to decisions made by

10    Mr. Bossidy during his role as CRO (Compl. ¶¶ 25, 27–29), an increase in the backlog of

11    inventory (*id.* ¶ 22), and declines in sales (*id.*) "as evidence of [his] severe

12    mismanagement" of Justice Grown's New Jersey operations. *Id.* ¶ 22.

13    But Mr. Bossidy's decisions to eliminate certain production jobs (*id.* ¶ 25), hire

14    advisors and consultants (*id*. ¶ 27), discontinue certain product lines (*id.* ¶ 28), and

15    determine the schedule for payments to New Jersey vendors (*id.* ¶ 29) are quintessential

16    business decisions—even if they result in negative outcomes—protected by the

17    presumption of the business judgment rule that should not be "second-guessed." *Seidman*

18    *v. Clifton Sav. Bank, S.L.A.*, 2009 WL 2513797, at *9–10 (N.J. App. Div. Aug. 19, 2009)

19    (even if decisions of officers are the consequence of their "'bad judgment, without bad

20    faith,'" they are "'not ordinarily [held] individually liable.'") (citations omitted), *aff'd*, 14

21    A.3d 36 (N.J. 2011); *see Lamme v. Client Instant Access, LLC*, 2022 WL 1276123, at *4

22    (N.J. App. Div. Apr. 29, 2022) (without "proof of bad faith, fraud, self-dealing, or

23    unconscionability, business decisions will not be questioned by the court"; even if they

24    are "ill-advised, that alone is insufficient to defeat the business judgment rule.").

25    Because Justice Grown cannot point to a single transaction that Mr. Bossidy stood

26    on both sides of, nor a single corporate decision that personally benefitted him to

27    overcome the presumption of the business judgment rule, Mr. Bossidy's decisions are

28    presumed to have been made in good faith and should not be called into question by the

court. When the presumption applies, "the decision makers are immune from liability from actions brought by others who have an interest in the business entity." *Seidman v. Clifton Sav. Bank, S.L.A.*, 14 A.3d 36, 52 (N.J. 2011) (internal quotations and citation omitted). Given that the vast majority of the Complaint criticizes actions Mr. Bossidy allegedly took as CRO without showing that he engaged in any self-dealing or unconscionable conduct, Plaintiff's allegations are insufficient to show that Mr. Bossidy breached his duty of loyalty. *See Stanziale v. Nachtomi*, 2004 WL 1812705, at *1–2 (D. Del. Aug. 6, 2004) (plaintiff required to allege "well-pleaded facts, not conclusory allegations" that a person acted out of self-interest or other improper motive to survive dismissal of its breach of fiduciary duty claim).

Justice Grown attempts to salvage its breach of loyalty claim by contending that Mr. Bossidy and AFC Gamma conspired to intentionally run the Company into the ground so that AFC Gamma could seize Justice Grown's New Jersey assets. Compl. ¶¶ 34–35, 39, 41, 60, 65; *see e.g., id.* ¶ 25 ("Bossidy's leadership and decisions are crippling operations so badly that it is hard to see that he is not doing this on purpose"); ¶ 39 ("much of Bossidy's mismanagement makes sense if AFC Gamma was planning to seize Justice Grown's assets for an MSO"); ¶ 40 ("[h]is actions therefore, help AFC Gamma to trap Justice Grown and to eventually take its assets"); ¶ 43 ("[a]gainst this background of the dispute between AFC Gamma and Justice Grown, Defendant Bossidy is behaving suspiciously"); ¶ 57 ("[h]is conduct is highly suspicious, particularly in light of the new information about . . . AFC Gamma's MSO plan, and his conduct and apparent allegiance to AFC Gamma"). These assertions rest entirely on counsel's speculation—unsupported by well-pleaded facts—and thus fall far short of what is required at the pleading stage. *See Iqbal*, 556 U.S. at 678 (a complaint that offers "'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice to satisfy "the pleading standard Rule 8 announces.") (quoting *Twombly*, 550 U.S. at 557).

First, the Complaint is devoid of any allegations that Mr. Bossidy had any knowledge of AFC Gamma's supposed plot to launch a multi-state cannabis operation,

which Justice Grown alleges without any factual support. *See* Compl. ¶¶ 34, 39.[4] These deficiencies are fatal to Plaintiff's accusation that Mr. Bossidy breached his duty of loyalty by purposely "mismanag[ing]" Justice Grown so that AFC Gamma could seize its assets for its own cannabis operation. Compl. ¶ 39. To show that an officer breached his duty of loyalty by acting in bad faith, a plaintiff must plead that he "intentionally" acted against the interest of the company. *In re Sols. Liquidation LLC*, 608 B.R. 384, 401 (Bankr. D. Del. 2019). Justice Grown fails to adequately plead that Mr. Bossidy was even aware of AFC Gamma's supposed venture, let alone that he intentionally sabotaged Justice Grown in support of the scheme. *See Schmidt v. Skolas*, 706 F. App'x 68, 74 (3d Cir. 2017) (affirming dismissal of duty of loyalty claim where the complaint included no facts of an officer's self-interest beyond "speculative allegations" requiring the court to make "inferential leaps beyond those permitted in the plaintiff's favor on a Rule 12(b)(6) motion.").

Second, the only factual allegations Justice Grown offer in support of its conspiracy theory do not establish the existence of any scheme between Mr. Bossidy and AFC Gamma. Plaintiff asserts that Mr. Bossidy and AFC Gamma had a "close relationship" because AFC Gamma "installed" Mr. Bossidy as CRO, refused Justice Grown's requests to replace him, Mr. Bossidy "routinely consult[ed] with AFC Gamma's CEO," and had "direct communications with AFC Gamma relating to his management of Justice Grown." Compl. ¶¶ 2, 6, 30. Self-evidently, these facts say nothing about a coordinated effort to ruin Justice Grown's business and so are insufficient to allege the presence of a conflicted transaction or a bad faith conspiracy. *See Jannett v. Gilmartin,* 2006 WL 2195819, at *7 (N.J. Super. Ct. July 21, 2006) (granting motion to dismiss where complaint was "bereft of any particularized factual allegations . . . suggest[ing] the kind of self-dealing or interest which would raise a reasonable doubt concerning the directors' conduct."). If these

---

[4] Justice Grown's claim that Dan Neville, AFC Gamma's CEO discussed the MSO idea "with others" (Compl. ¶ 35) clearly lacks any well-pled connection to Mr. Bossidy and is therefore of no significance to Plaintiff's claim.

1  barebones facts are enough to establish a conflict, any corporate fiduciary could be held

2  personally liable for a company's poor performance, merely because they were appointed

3  by an outside party and maintained communications with that party during the tenure of

4  their engagement.

5          Third, the remaining allegations concerning Mr. Bossidy's purported

6  "mismanagement" in two of his previous roles at other companies lend no support to

7  Justice Grown's Complaint. *See* Compl. ¶¶ 36–38. These claims of past conduct say

8  nothing at all about a purported scheme between and among Mr. Bossidy and AFC

9  Gamma.

10         Third Circuit courts have made clear that such "sweeping allegations of a

11 conspiracy" are not enough to satisfy the plausibility standard. *Lemar*, 643 F. App'x at

12 81–82 (affirming dismissal of breach of fiduciary duty claim because plaintiff's

13 conspiracy allegations were insufficient to satisfy the plausibility standard and failed to

14 demonstrate "more than a sheer possibility that [the] defendant . . . acted unlawfully.").

15 Justice Grown must plead particular "factual content concerning the circumstances" of

16 Mr. Bossidy's alleged conspiracy, to "nudge Plaintiff's claims of breach . . . across the

17 line from conceivable to plausible." *Swift v. Pandey*, 2013 WL 6022093, at *9 (D.N.J.

18 Nov. 13, 2013) (dismissing breach of duty of loyalty claim because "[a]bsent . . . factual

19 content to substantiate conclusory allegations . . . Plaintiff has failed to state a claim for

20 breach of duty of loyalty that is plausible on its face.").

21         Finally, Justice Grown's conspiracy theory is implausible. If AFC Gamma's

22 primary goal was to seize Justice Grown's assets, including the cultivation/manufacturing

23 facility and retail stores, it could easily have refused to enter into the Forbearance

24 Agreement and instead exercised its rights and remedies under the credit agreement

25 following Justice Grown's defaults in 2023. There was no need to install Mr. Bossidy as

26 CRO and devise an entire scheme to run Justice Grown's New Jersey operations into the

27 ground if AFC Gamma had an indisputable right to seize Justice Grown's assets *before*

28 Mr. Bossidy was even appointed as the CRO. Why not just seize Justice Grown's assets

in 2023 if that was, as Plaintiff contends, AFC Gamma's goal all along? Justice Grown never addresses this fundamental plausibility defect in its Complaint.

In short, Justice Grown's circuitous conspiracy theory is critically undermined by the "obvious alternative explanation" that AFC Gamma required Justice Grown to hire an outside consultant in the hopes that a CRO would be able to improve Justice Grown's performance and ultimately resolve the financial issues at the Company so Justice Grown could meet its loan obligations. *See Twombly*, 550 U.S. at 567; *Scheidt v. DRS Techs.*, Inc., 36 A.3d 1082, 1090–91 (N.J. App. Div. 2012) (plaintiff failed to adequately "suggest an improper motive" for the transaction at issue where defendants could have achieved the same benefit without having ever taken the challenged action).

### 2.    Plaintiff Fails to Plead a Breach of the Duty of Candor

Plaintiff similarly fails to plead a violation of the duty of candor based on Mr. Bossidy's alleged "withholding" of "critical business communications." Compl. ¶ 65. Justice Grown has not adequately alleged that Mr. Bossidy refused to turn over the requested emails and list of his outside email accounts used to communicate with AFC Gamma out of self-interest or in bad faith in violation of his duty. *Id.* ¶¶ 47, 52, 70; *see* 18B Am. Jur. 2d Corporations § 1469 (the duty of candor obligates corporate fiduciaries "to disclose all material information relevant to corporate decisions from which they may derive a personal benefit and not to withhold relevant information concerning any potential conflict of interest with the corporation.").

As discussed above, *supra* Part B.1, Justice Grown has failed to allege any plausible facts demonstrating that Mr. Bossidy was "interested" in any transaction, engaged in any self-dealing or derived any personal benefit from any transaction. Accordingly, the Complaint lacks plausible facts to infer that Mr. Bossidy's alleged "refusal" to provide the requested information on the timeline demanded by Justice Grown's owners was done to further a supposed conflicting interest in any transaction or sustain some form of improper arrangement with AFC Gamma. Compl. ¶ 70; s*ee Goydos v. Rutgers, State Univ.*, 2024 WL 1329253, at *2 (D.N.J. Mar. 28, 2024) (dismissing breach of loyalty

claim where the complaint failed to adequately allege that the defendant engaged in any self-dealing based on conclusory assertions that he obtained "information to be used for his own personal benefit.") (internal quotations and citation omitted).

Additionally, as pled, the facts undermine Justice Grown's accusation that Mr. Bossidy "withheld" or "refus[ed]" to turn over "critical business communications." Compl. ¶¶ 65, 69, 70. During his email communications with Mr. Kanovitz that transpired over two days on March 3–4, 2025, Mr. Bossidy provided prompt responses to each of Mr. Kanovitz's emails, even after receiving Justice Grown's threatening litigation hold letter just a few days before, and repeatedly requested to schedule calls to discuss the information sought by Mr. Kanovitz. Compl. Ex. 1 at 1–3. Mr. Kanovitz refused each of Mr. Bossidy's requests for a call. *Id.* Eventually, in his final email on March 4, Mr. Bossidy informed Mr. Kanovitz that he needed to seek the advice of legal counsel before responding to Mr. Kanovitz's request. *Id.* at 1. It cannot be a breach of fiduciary duty for an individual to seek advice of legal counsel after receiving a litigation hold letter threatening legal claims and a demand for pre-litigation discovery.

## C.    Plaintiff Fails to Plead Damages

Finally, Justice Grown is unable to plead any plausible and resulting damages from Mr. Bossidy's purported breach of fiduciary duty. *See Namerow v. PediatriCare Assocs., LLC*, 218 A.3d 839, 846 (N.J. Ch. Div. 2018) ("Under New Jersey law, in order to establish a claim for breach of fiduciary duty, a plaintiff must show . . . injury to the plaintiff occurred as a result of the breach and the defendant caused that injury") (cleaned up)*; see also In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987) ("Breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation.").

Justice Grown's claim that it suffered over $170.9 million in damages due to "AFC Gamma's and Bossidy's mismanagement including lost enterprise value, lost profits, wasted payments to Bossidy's 'consultant' friends, and cascading losses to other operations" (Compl. ¶ 59), is entirely conclusory and made without any factual basis.

"The burden of showing damages arising from . . . breaches [of fiduciary duties] remains with the plaintiff." *Winklevoss Cap. Fund, LLC v. Shaw*, 2024 WL 3888757, at *10 (Del. Ch. Aug. 21, 2024). However, Justice Grown fails to explain how any of Mr. Bossidy's alleged acts of mismanagement amount to more than $170 million in damages, and makes no attempt to justify its total figure by quantifying any of the alleged harms the Company has supposedly suffered. These deficiencies are not only insufficient to meet Plaintiff's damages burden, but are also fatal to its breach of fiduciary duty claim. *See Canon Fin. Servs., Inc. v. Bray*, 2015 WL 851816, at *5 (D.N.J. Feb. 26, 2015) (dismissing breach of fiduciary duty and breach of duty of loyalty claims where plaintiff failed to adequately assert "any harm" caused by the defendant's conduct "to substantiate the conclusion that it suffered $75,000, or more, in damages.").

## III.   JUSTICE GROWN FAILS TO ADEQUATELY ALLEGE A CONVERSION CLAIM

Under New Jersey law, conversion is the "wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *FMHUB, LLC v. MuniPlatform, LLC*, 2021 WL 1422873, at *9 (D.N.J. April 15, 2021). The Complaint fails to include factual allegations necessary to establish a claim for conversion: "(1) wrongful exercise of dominion or control over the property of another; (2) the taking of the property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property." *Id*.   Justice Grown's conversion claim thus fails as a matter of law.

### A.   Plaintiff Fails to Plead Conversion of Any Tangible Property

Under New Jersey law, the tort of conversion "may be applied only to interference with tangible property, and courts have consistently held that intangible property cannot be the subject of such a claim." *Shrink Packaging Sys. Corp. v. Kist*, 2023 WL 5664733, at *8 (D.N.J. Sept. 1, 2023). It is well-established that electronic files or information— the precise communications sought here by Justice Grown (*see* Compl. ¶ 55)—are considered intangible property and are thus, inadequate to state a claim for conversion.

*See Shrink Packaging Sys. Corp.*, 2023 WL 5664733, at *8 ("[A] claim for conversion of intangible property, such as electronic files or information, will not lie.") (citation omitted); *Slim CD, Inc. v. Heartland Payment Sys. Inc.,* 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (holding that customer transaction data transmitted via computer is intangible property and not appropriately the subject of a conversion claim); *K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita*, 2006 WL 1281291, at *3 (D.N.J. May 10, 2006) (dismissing conversion claim because electronic customer list, market information, sales prices, and other items were "not tangible property" and therefore, could not "be the subject of a conversion claim.").

This fundamental distinction is detrimental to Plaintiff's claim. Justice Grown insists on the production of Mr. Bossidy's "emails, texts and the like" in addition to "phone logs of his verbal communications." Compl. ¶¶ 11, 55. In other words, "the only property at issue here is intangible . . . data transmitted via computer." *Slim CD, Inc.,* 2007 WL 2459349, at *12. Nowhere does Justice Grown claim that Mr. Bossidy interfered with any *tangible* property; the Complaint contains no allegations whatsoever that Mr. Bossidy took any physical documents or any other physical property.

Under New Jersey law, it is "insufficient to state a claim for conversion" based on allegations that a defendant "is in possession of digital/computer files which are not embodied in a physical medium." *Shrink Packaging*, 2023 WL 5664733, at *8 (dismissing conversion claim involving only "financial data, financial projections, competitive threat analyses, sales and cost information, and governance documents" emailed by the defendant "from his Company email to his personal email" because the complaint failed to allege that the defendant "took physical documents."). Accordingly, because Plaintiff's conversion claim is solely based on the alleged conversion of intangible property, it should be dismissed as a matter of law.

**B.    Plaintiff Fails to Plead Mr. Bossidy Possessed Justice Grown's Property Without Authorization or Withheld Any Property to the Exclusion of Justice Grown's Rights**

In addition to Justice Grown's failure to satisfy the threshold tangible property requirement for a conversion claim, it also fails to meet the remaining elements. The Complaint offers no facts showing that Mr. Bossidy "wrongful[ly] exercise[d] . . . dominion and control" over Justice Grown's property to the exclusion of Justice Grown's rights in that property. *See Pickett v. Brown*, 2022 WL 1200802, at *2–3 (D.N.J. Apr. 22, 2022) (dismissing conversion claim where, outside of "generalized legal conclusions," the Amended Complaint was deficient of any facts "identifying the property at issue . . . demonstrating that Plaintiff had a right to this unidentified property" and specifying how the defendant "allegedly interfered with such rights.").

Indeed, Plaintiff concedes that "[w]hile Justice Grown owns and has a legal right to possess Bossidy's emails through his Justice Grown email account, ***it does not control*** the other outside accounts [Mr. Bossidy] used to communicate with AFC Gamma, including, for example, any personal email accounts, corporate email accounts with SierraConstellation Partners (the corporation through which [Mr. Bossidy] provides his services), texts, etc." Compl. ¶ 52 (emphasis added).[5]

Plaintiff admittedly has no control over Mr. Bossidy's communications from his outside accounts or ownership over these electronic records and has pled no facts to demonstrate that the content of these communications would suggest otherwise. These

---

[5] Further, Plaintiff states that all "communications between Bossidy and AFC are company property" and "Bossidy's refusal to turn over these communications constitute conversion of JC's corporate records." *Id.* ¶¶ 69–70. This sweeping broadbrush assertion suffers from two additional defects. First, Justice Grown offers no factual basis to support that "*all* of [Mr. Bossidy's] communications with AFC Gamma" (*id.* ¶ 55 (emphasis added))—regardless of subject matter or temporal period—are somehow Justice Grown's property, even where the communication pre-dates Mr. Bossidy's appointment as CRO, or where the communication does not pertain to Justice Grown. *See Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, 2014 WL 108895, at *7 (Del. Ch. Jan. 13, 2014) (dismissing conversion claim and noting that "[f]or a plaintiff to recover under a theory of conversion, he must prove, *inter alia*, precisely what property the defendant converted[.]") (internal quotation marks omitted). Second, self-evidently, Mr. Bossidy's e-mails on Justice Grown servers cannot be the subject of the conversion claim.

allegations are therefore insufficient to support Justice Grown's conversion claim. *See W.H.P.M., Inc., v. Immunostics, Inc.*, 2020 WL 359146, at *5 (D.N.J. Jan. 22, 2020) (granting defendant's motion and dismissing conversion claim based on conclusory allegation that was insufficient to show that defendant "wrongfully interfered" with [plaintiff's] ownership rights" and took the property "to the exclusion of [plaintiff's] right to it.") (quoting *Lutsky v. Monomouth Marine Engines, Inc.*, 2013 WL 2285971, at *4 (D.N.J. May 22, 2013)).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice.


Dated: August 12, 2025              Respectfully submitted,

                                    **WEIL, GOTSHAL & MANGES LLP**

                                    By:   */s/ David R. Singh*
                                         DAVID R. SINGH

                                    DAVID R. SINGH (Bar No. 300840)
                                    david.singh@weil.com
                                    201 Redwood Shores Parkway, 4th Floor
                                    Redwood Shores, CA 94065-1134
                                    Telephone: (650) 802-3000
                                    Facsimile: (650) 802-3100

                                    CAROLINE H. ZALKA (*pro hac vice* forthcoming)
                                    caroline.zalka@weil.com
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Tel. (212) 310-8000
                                    Fax: (212) 310-8007

                                    Attorneys for Defendant TIMOTHY BOSSIDY

## __CERTIFICATE OF COMPLIANCE__

The undersigned, counsel of record for Defendant Timothy Bossidy, certifies that this brief contains 6,667 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 12, 2025

Respectfully submitted,

By: _/s/ David R. Singh_
     DAVID R. SINGH